599 So.2d 1014 (1992)
UNITED AMERICAN BANK OF CENTRAL FLORIDA, INC., Appellant,
v.
Donald SELIGMAN and John G. Pierce, Appellees.
No. 91-1316.
District Court of Appeal of Florida, Fifth District.
April 24, 1992.
Rehearing Denied June 17, 1992.
*1015 John V. Baum of Panico & Baum, Maitland, for appellant.
John G. Pierce, Orlando, for appellees.
COWART, Judge.
The Griffins owned, controlled and worked at a brokerage firm, Professional Realty and Development Company, which firm had the right to receive from third parties certain real estate commissions. Donald Seligman worked for the Griffins (Professional Realty) as a commissioned salesman.
The Griffins borrowed money from a bank securing the loan by a second mortgage on their home. As additional security for the Griffins' debt to the bank, Professional Realty assigned to the bank its right in and to certain real estate commissions in which Seligman had some interest. As further additional security Seligman executed a limited guaranty of the Griffins' debt to the bank.
A dispute arose between the Griffins, as brokers, and Seligman, as salesman, as to their respective rights to certain funds derived from real estate commissions and, pending resolution of their dispute, the Griffins and Seligman agreed to, and did, deposit the disputed funds in escrow with Seligman's attorney, John G. Pierce.
The Griffins defaulted in repaying their debt to the bank and the bank filed an action to foreclose the Griffins' mortgage, to recover the commissions assigned as collateral and to recover from Seligman on the limited guaranty. In this posture and to facilitate resolution of the question of Seligman's liability to the bank on the limited guaranty, on December 23, 1987, Seligman's attorney, Pierce, negotiated a settlement agreement with the bank. In the agreement the bank agreed that the balance on Seligman's guaranty to the bank was $12,894.34 and Seligman agreed that the funds ultimately due Seligman under the original escrow agreement would "be paid over to the Bank". Paragraphs 4 and 5 of this agreement provided:
4. John Pierce, Esq., agrees to retain, in escrow, the $30,000.00 [actually $30,250] he currently holds... until such time as an agreement is reached between Professional Realty and Development Company, Inc., Seligman and the Bank, as to its distribution, or a determination is made by a court of competent jurisdiction. All proceeds payable to Professional Realty and Development Company, Inc. shall be paid directly to the Bank to be credited against sums due or to become due pursuant to the transaction currently being litigated in the matter described in Paragraph 5 herein. The portion due Seligman, as set forth above, to the extent necessary to pay in full the amounts set forth in Paragraph 3A above, shall be paid to the Bank to be credited against his said obligations to the Bank. (Emphasis added).
5. In the event the dispute described in Paragraph 3B above is not resolved and funds disbursed by April 1, 1988, Seligman agrees to execute a promissory note in form acceptable to Bank [attached] for the difference between the said $31,019.34 less credits for fifty per cent (50%) of the sums paid pursuant to the Settlement Agreement, to wit: $18,125.00, subject to adjustments pursuant to Paragraph 3C, either before or after the execution of said promissory note. Said note shall be secured by an assignment of Seligman's interest in the escrow held by John G. Pierce, per Paragraph 4 above. (Emphasis added).
Thereafter the Griffins filed for bankruptcy and a trustee was appointed to take *1016 possession of their assets and property. The trustee in bankruptcy, who had succeeded to the Griffins' interests, and attorney Pierce, acting on behalf of Seligman, negotiated a settlement of the original commission dispute between the Griffins, as brokers, and Seligman, as salesman, and pursuant to that negotiated settlement agreement attorney Pierce, as escrow agent, disbursed the funds being held in escrow by paying one half ($15,125) of those funds to the bankruptcy trustee[1] and the other half to Seligman.
The bank, which had not otherwise received all sums due it from the Griffins, brought this action against Seligman and his attorney Pierce. Count I was against Seligman on his guaranty, Count II was against Pierce for an accounting relating to the escrowed funds and Count III was against Pierce for conversion. Pierce admits he was at all times well aware of the terms of the December 23, 1987, settlement agreement but defended on the grounds that he was not a party to the December 23, 1987 agreement and had no fiduciary or other duty to the bank relating to the escrow funds on which legal liability could be predicated. From a summary judgment in favor of Pierce the bank appeals. We reverse.
An escrow agent is, in effect, a stakeholder who agrees, expressly or impliedly, to hold possession of some property (usually funds) and to act with regard thereto (usually meaning to disburse the funds) in accordance with some agreement between the principal parties who have agreed to the escrow agreement. See, SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P.A., 584 So.2d 1051 (Fla. 2d DCA 1991). In every such escrow agreement there are two agreements involved, although both can be incorporated into one document. The primary agreement is that between the principal parties who have or claim an interest in the escrowed funds. The second agreement is the agency agreement between the main parties as principals and the escrow agent. Either or both of the two agreements can be expressed or implied, written or oral, subject only to applicable statutes of fraud, etc.
Regardless of the escrow agent's other relationships or duties to the principal parties (lawyers often hold funds in escrow where their client is one principal party and some other non-client is another principal party) when principal parties agree upon an escrow agent, by undertaking to act as such, the escrow agent establishes a new legal relationship to the principal parties and by an expressed agreement or by agreement implied in law, agrees to certain basic inherent matters. The relationship established is that of principal and agent and involves the escrow agent being an agent of, and owing a fiduciary duty to, all of the principal parties. In the absence of an express agreement, written or oral, the law will imply from the circumstances of the escrow that the agent has undertaken a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the escrowed property, and (2), to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (i.e., to disburse the escrowed funds) in strict accordance with the principals' agreement.
In this case the original escrow agreement between the Griffins and Seligman was only for the escrow agent to hold the disputed commission funds until those parties resolved their dispute and then to disburse the escrowed funds in accordance with any subsequent settlement agreement between those parties. However, the facts did not immediately take that turn and thereafter the original escrow agreement was modified on December 23, 1987, to the extent that Seligman agreed with the bank that any funds due Seligman under the original escrow agreement would be delivered by the escrow agent to the bank and credited by the bank against Seligman's limited guaranty to the bank of the Griffins' financial obligation to the bank. The *1017 December 23, 1987, agreement was in effect, in equity, an assignment of Seligman's interest in the escrow funds to the bank, subject to certain terms, conditions and limitations, or, at least, by that agreement the bank became, in equity, if not in law, a third party beneficiary to Seligman's rights under the original escrow agreement. Under law the escrow agent became obligated to disburse the escrow funds in accordance with the modification-settlement agreement of December 23, 1987.[2] The bank, under that agreement, became entitled to Seligman's share of the escrowed funds. After negotiating a settlement agreement with the trustee in bankruptcy who represented the Griffins' interests, the escrow agent breached his duty when he disbursed the escrowed funds directly to his client, Seligman, contrary to Seligman's agreement with the bank dated December 23, 1987.
The parties further disagree as to the sufficiency of Count III of the information which undertakes to state a cause of action in favor of the bank against the escrow agent on the theory of conversion. The tort of conversion constitutes the exercise of wrongful dominion or control of the property to the detriment of the rights of its actual owner.[3] The essence of the tort cause of action of conversion is the disseisin of the owner or interference with legal rights incident to ownership, such as the right to possession[4] and the essence of that strictly common law civil cause of action does not appear to fit the facts of this case where the escrow agent rightfully came into possession of the funds, and the escrow agent's failure to deliver the escrowed funds to the proper person was the breach of a contractual duty, rather than the breach of a duty imposed by tort law. However, the facts alleged in the complaint are sufficient to state a cause of action in debt in favor of the bank and against the escrow agent based on a breach of the escrow agent's duty to pay to the bank the share of the escrowed funds to which Seligman would have been entitled under the original escrow agreement but to which the bank became entitled under the December 23, 1987, escrow modifying agreement.
The summary judgment in favor of the escrow agent and against the bank is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
COBB and W. SHARP, JJ., concur.
NOTES
[1] Whether or not the bankruptcy trustee was entitled to the Griffins' interest in the disputed funds as against the bank to which the Griffins had assigned their rights as additional collateral for their bank debt, is not an issue on this appeal.
[2] If the escrow agent had any question about his duties relating to the escrowed funds, he should have interpleaded them in court.
[3] Envases Venezolanos, S.A. v. Collazo, 559 So.2d 651 (Fla. 3d DCA 1990). See City of Cars, Inc. v. Simms, 526 So.2d 119 (Fla. 5th DCA 1988), rev. denied, 534 So.2d 401 (1988); E.J. Strickland Const., Inc. v. Department of Agriculture and Consumer Services, 515 So.2d 1331 (Fla. 5th DCA 1987).
[4] Goodrich v. Malowney, 157 So.2d 829 (Fla. 2d DCA 1963).