622 So.2d 1063 (1993)
Floyd WATKINS, Appellant,
v.
NCNB NATIONAL BANK OF FLORIDA, N.A., Appellee.
No. 92-1298.
District Court of Appeal of Florida, Third District.
August 3, 1993.
Rehearing Denied September 21, 1993.
*1064 Gilbride, Heller & Brown, Miami, and Tim D. Henkel, Coral Gables, for appellant.
Kaufman Miller Dickstein & Grunspan and Raymond V. Miller, Jr., Miami, for appellee.
Before BASKIN, JORGENSON and LEVY, JJ.
JORGENSON, Judge.
Floyd Watkins appeals from a final judgment striking his affirmative defenses and dismissing his counterclaims in an action by NCNB National Bank of Florida, N.A. (NCNB) on a promissory note for a loan used by Watkins to purchase units in a limited partnership, Silver Pines, Ltd. We affirm.
In December 1987, the general partners of Silver Pines contacted Watkins regarding the sale of partnership units in a limited partnership formed to purchase, manage, and resell a shopping center. After inspecting the shopping center and a placement memorandum which was used to market the sale of the units, Watkins decided to purchase three units in the partnership. NCNB loaned Watkins $276,000 secured by a promissory note in connection with the purchase of the partnership units.
The placement memorandum specified that if fourteen units were not sold by July 1, 1986 the monies would be refunded to the initial investors unless the deadline was extended by the general partners to on or before September 30, 1986. If the 14 units were sold before the closing date, the offering would continue until 21.5 units were sold. Thus, the partnership units would be offered during two phases. NCNB as an escrow agent agreed to hold in escrow the subscription proceeds and the promissory notes from first phase investors and refund the monies to the first phase investors if fourteen partnership units were not sold before the closing date. NCNB allegedly wrongfully terminated the escrow and disbursed the subscription money and promissory notes to Silver Pines on or about October 1986 notwithstanding the fact that the minimum number of units had not been sold.
NCNB sued Watkins on the promissory note. Watkins counterclaimed and asserted several affirmative defenses. The counterclaims and affirmative defenses alleged fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, estoppel, unclean hands, and cancellation of the promissory note. The trial court granted NCNB's motion to dismiss the counterclaims and strike the affirmative defenses. The trial court properly dismissed the counterclaims and affirmative defenses as NCNB owed no fiduciary or common law duty to disclose to Watkins that the Silver Pines offering closed on October 1986 without the minimum number of units having been sold.
NCNB did not owe Watkins a fiduciary duty to disclose. Escrow holders are recognized as agents of the parties to the escrow and as trustees in charge of the performance of an express trust. Dodson v. National Title Ins. Co., 159 Fla. 371, 31 So.2d 402 (1947); Ullendorff v. Graham, 80 Fla. 845, 87 So. 50 (1920); SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P.A., 584 So.2d 1051 (Fla. 2d DCA 1991); Biadi v. Lawyers Title Ins. Corp., 374 So.2d 30 (Fla. 3d DCA 1979). As such, escrow holders have a fiduciary duty to exercise reasonable skill and ordinary diligence. Biadi, 374 So.2d at 34. Moreover, as agents escrow holders have a duty to disclose all material facts. See Sudberry v. Lowke, 403 So.2d 1117 (Fla. 5th DCA 1981); Hershey v. Keyes Co., 209 So.2d 240 (Fla. 3d *1065 DCA), cert. denied, 214 So.2d 623 (Fla. 1968). An escrow holder, however, owes a fiduciary duty only to the parties to the escrow transaction. Pope v. Savings Bank of Puget Sound, 850 F.2d 1345 (9th Cir.1988); see 30A C.J.S. Escrows § 10 (1992). In Pope, the court found that a creditor of a real estate vendor was not a party to the closings and at best the creditor was an incidental third-party beneficiary because of the creditor's status as a junior lienholder. Pope, 850 F.2d at 1354. The court held that because the creditor was not a party to the escrow transaction the escrow agent could not be liable to the creditor for breach of fiduciary duty. Id; compare with Powell v. H.E.F. Partnership, 793 F. Supp. 91 (D.Vt. 1992) (bank, acting as escrow agent, breached fiduciary duty of disclosure to investors whose purchase money was being held by the bank when it failed to disclose a known fraud).
NCNB, as escrow agent, owed a fiduciary duty only to Silver Pines and to the first phase investors. NCNB terminated its contractual obligations under the escrow agreement in October 1986 when it disbursed the initial subscription monies to Silver Pines. Even if the escrow was wrongfully terminated, NCNB owed no fiduciary duties to Watkins because Watkins as a second phase investor was not a party to the escrow. Moreover, contrary to Watkins' assertions, NCNB did not owe a contractual duty to Watkins as a third-party beneficiary of the escrow. To bring an action as a third-party beneficiary, the escrow agreement had to show a clear intent to directly and substantially benefit the second phase investors and not to merely provide an indirect benefit to the second phase investors. Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985); Davids v. A.R.A. Servs., Inc., 572 So.2d 14 (Fla. 3d DCA 1990). The purpose of the escrow agreement was to hold the subscription monies of the first phase investors for their benefit. If the minimum number of units was not sold, the money would be returned to the first phase investors. Although Watkins may qualify as an incidental third-party beneficiary of the escrow agreement, such status is not sufficient to allow him to sue for breach of the escrow agreement. Pope, 850 F.2d at 1354.
NCNB's creditor-debtor relationship with Watkins is also insufficient to create a fiduciary duty. A fiduciary duty to disclose material facts to customers arises where a bank establishes a confidential or fiduciary relationship with a customer and the transaction is one from which the bank is likely to benefit. Barnett Bank of West Florida v. Hooper, 498 So.2d 923, 925 (Fla. 1986); Atlantic Nat'l Bank of Florida v. Vest, 480 So.2d 1328 (Fla. 2d DCA 1985). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." Bankest Imports, Inc. v. Isca Corp., 717 F. Supp. 1537, 1541 (S.D.Fla. 1989). In the usual creditor-debtor relationship a fiduciary duty does not arise. See Hooper, 498 So.2d at 925. NCNB's alleged superior knowledge of Silver Pines' financial condition is thus insufficient to transform the creditor-debtor relationship into a fiduciary relationship.
Watkins also alleges that NCNB owed duties of care and disclosure to Watkins even if NCNB was not a fiduciary. "In an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." Lanz v. Resolution Trust Corp., 764 F. Supp. 176, 179 (S.D.Fla. 1991); Bankest, 717 F. Supp. at 1541; Cripe v. Atlantic First Nat'l Bank, 422 So.2d 820 (Fla. 1982). Furthermore, in the absence of a fiduciary relationship, NCNB's nondisclosure of material facts in an arm's length transaction is not actionable misrepresentation unless NCNB employed an artifice or trick to prevent an independent investigation by Watkins. Hauben v. Harmon, 605 F.2d 920 (5th Cir.1979); Taylor v. American Honda Motor Co., 555 F. Supp. 59 (M.D.Fla. 1982); Ramel v. Chasebrook Constr. Co., 135 So.2d 876 (Fla. 2d DCA *1066 1961); see also Baraban v. Manatee Nat'l Bank of Bradenton, 212 So.2d 341 (Fla. 2d DCA 1968). Watkins in his counterclaims and affirmative defenses fails to allege that NCNB employed any artifice or trick to prevent him from performing his own investigation. Watkins acknowledges that before requesting the loan he met with Silver Pines' general partners, visited the shopping center, and inspected the placement memorandum. Watkins also fails to plead any facts supporting an unequal opportunity to discover the information. Ramel, 135 So.2d at 882.
NCNB owed no fiduciary or common law duty to Watkins.[1] Thus, assuming the truth of the allegations and construing them in the light most favorable to Watkins, the allegations in the counterclaims and affirmative defenses are insufficient to state valid claims and defenses against NCNB. The trial court properly dismissed the counterclaims and struck the affirmative defenses.
Affirmed.
NOTES
[1] The federal courts have exclusive jurisdiction over alleged violations of the Securities Exchange Act of 1934. We agree with the trial court that Watkins cannot rely on Rule 10-b(9) of the Securities Exchange Act of 1934 as a source of duty to disclose.