**RESOLUTION TRUST CORPORATION,**
As Conservator for HomeFed Bank,
F.A., Plaintiff,

v.

**BROAD & CASSEL, P.A., a Florida**
service corporation, Defendant.

No. 94–225–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

June 27, 1995.

Richard Allen Nielsen and Shari L. Lefton, Salem, Saxon & Nielsen, P.A., Tampa, FL, for plaintiff.

William L. Kirk, Jr., Douglas B. Brown, and Christopher T. Hill, Rumberger, Kirk & Caldwell, P.A., Orlando, FL, for defendant.

## ORDER

G. KENDALL SHARP, District Judge.

This case is before the court on Plaintiff's motion for summary judgment (Doc. 49) and Defendant's motion for summary judgment as to liability (Doc. 47). This action arises out of an escrow agreement in which Defendant Broad & Cassel, P.A. (Broad & Cassel) served as an escrow agent. Calusa Trace Development Corporation (CTDC) sold St. Joseph's Health Care Center, Inc. (St. Joseph's) a piece of property and agreed to perform certain improvements on the property. St. Joseph's placed funds in escrow to be paid to CTDC when it completed the improvements, and the parties named Broad & Cassel as escrow agent. CTDC later assigned its rights under the escrow agreement to HomeFed Bank (HomeFed) to secure a loan, but still received payment from Broad & Cassel through the escrow agreement. Plaintiff Resolution Trust Corporation (RTC), as conservator for HomeFed, has brought this action asserting that Broad & Cassel violated its contractual and fiduciary duties. The court concludes that these claims are without merit as a matter of law, and therefore grants Broad & Cassel's motion for summary judgment.

## I.  Facts

The relevant facts for purposes of this motion are undisputed. On July 26, 1986, CTDC sold St. Joseph's a parcel of property located in the southern portion of a development known as the Calusa Trace Project. As part of the agreement, CTDC agreed to construct certain improvements on the parcel. The parties entered into an escrow agreement where CTDC would receive funds from St. Joseph's upon completing the improvements. St. Joseph's deposited $400,000 into the escrow account, and the parties named Broad & Cassel as escrow agent.

The parties strictly limited Broad & Cassel's duties under the escrow agreement. Paragraph Four of the escrow agreement provides,

> The only duty of the Escrow Agent under the terms of the [agreement] shall be to pay the funds held in escrow ... as directed from time to time by Buyer, to pay the costs of construction and installation of the improvements. The Escrow Agent shall disburse said funds only upon receipt of a written certification and direction from the Buyer (a "Direction to Pay"), which shall specifically identify each person to whom a payment is to be made, the amount to be paid to each such payee, and the purpose for such payment. The Escrow Agent shall have the absolute right and shall be required to rely solely and entirely upon such Direction to Pay from the Buyer, and shall have neither the responsibility, nor the right to inquire into such Directions to Pay from the Buyer.

In addition, Paragraph Five specifically limits Broad & Cassel's liability as escrow agent. "All parties agree that the Escrow Agent shall not be liable to any party or person whomsoever for misdelivery to Seller or Buyer of monies subject to this escrow, unless such misdelivery shall be due to willful breach of this agreement or gross negligence on the part of the Escrow Agent."

On June 2, 1988, Igal Knobler (Knobler), an attorney at Broad & Cassel, wrote to Scott Zimmerman (Zimmerman), a HomeFed representative. HomeFed was arranging to refinance the Calusa Trace Project. Knobler

sent Zimmerman a copy of the escrow agreement and stated that Broad & Cassel intended to disburse the escrow fund in accordance with the escrow agreement unless St. Joseph's and CTDC made other arrangements. One week later, CTDC closed a $20.5 million loan from HomeFed. As part of the arrangements for that loan, CTDC executed an Assignment of Escrow Agreement relating to the escrow agreement with St. Joseph's. CTDC and HomeFed entered into this assignment in order "to further secure the loan." The assignment was forwarded to and acknowledged by Alice Blackwell White (White), another attorney at Broad & Cassel, on behalf of Broad & Cassel as escrow agent. Neither CTDC nor HomeFed ever involved St. Joseph's in this assignment.

The assignment signed by CTDC and HomeFed states that CTDC assigned its rights to HomeFed "to further secure the Loan and in consideration of the Loan." CTDC assigned "all of its rights, title and interest in and to [the escrow agreement]," and HomeFed agreed that it "shall assume and be bound by all of the duties and obligations of [CTDC] under [the escrow agreement]." CTDC agreed not to modify the agreement "without the prior written consent of [HomeFed]." Finally, CTDC acknowledged that HomeFed's authorization of the loan "shall be made by [HomeFed] in full reliance upon this Assignment."

On August 9, 1989, a CTDC representative sent a letter to St. Joseph's counsel, announcing that $300,000 worth of improvements had been completed on St. Joseph's parcel and requesting the release of $300,000 to CTDC from the escrow fund. An independent engineering firm verified that the improvements on St. Joseph's property had been performed. St. Joseph's counsel then sent a letter to Knobler on October 4, 1989, directing the escrow agent to pay CTDC $300,000 from the escrow fund. Despite the fact that White had previously acknowledged the assignment on behalf of Broad & Cassel, Knobler knew nothing of the document and authorized disbursing the money. On October 5, Broad & Cassel wired $300,000 to CTDC's operating account. At that point, CTDC had not defaulted on its loan from HomeFed.

Throughout this period, no one informed St. Joseph's of the assignment between CTDC and HomeFed. CTDC later defaulted on its loan, and RTC now seeks to recover the funds disbursed to CTDC.

## II. Legal Discussion

RTC, as receiver for HomeFed, filed this action against Broad & Cassel for misdelivery of funds, under theories of breach of contract and breach of fiduciary duties. Both parties have filed motions for summary judgment. RTC claims that Broad & Cassel violated both the escrow agreement and its fiduciary duties by disbursing funds to CTDC after acknowledging the assignment. RTC states that HomeFed was properly substituted as a principal in the agreement for CTDC, and that any funds that were to be sent to CTDC under the escrow agreement should have been sent directly to HomeFed. Broad & Cassel has responded with a variety of arguments and affirmative defenses, asserting that it is not liable either under the contract or for breach of its fiduciary duties. Both parties agree that the court should apply Florida law to resolve the substantive issues in this case. After establishing the standards for summary judgment, the court will consider the contractual and fiduciary duty issues separately.

### A. *Summary Judgment Standards*

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrele-

vant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

■ The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## B. *Breach of Contract*

■ Both RTC and Broad & Cassel raise a number of arguments with regard to Broad & Cassel's obligations under the escrow agreement and the assignment. Ultimately, however, the question is whether Broad & Cassel breached the escrow agreement by disbursing funds to CTDC upon a direction to pay from St. Joseph's, after it had notice of CTDC's assignment of rights to HomeFed. A valid assignment only transfers to the assignee whatever rights the assignor possessed. *See, e.g., Florida Bahamas Lines, Ltd. v. The Steel Barge "Star 800" of Nassau,* 433 F.2d 1243, 1246 (5th Cir.1970). HomeFed could not assume any

rights that CTDC did not possess under the original escrow agreement. Despite the existence of the assignment, RTC acknowledges that HomeFed never entered into an agreement with St. Joseph's to replace CTDC as the "seller" under the escrow agreement or to make any other changes to the agreement.

■ HomeFed's right to direct disbursement of the escrow funds turns on CTDC's rights under the escrow agreement, the language contained in the assignment, and the notice of the assignment provided to the other interested parties. RTC acknowledges that there is nothing in the language of the assignment that explicitly states that HomeFed should be paid directly by the escrow agent. In *City of North Miami v. American Fidelity Fire Ins. Co.,* 505 So.2d 511 (Fla.Dist.Ct.App.1987), a Florida appellate court held that notice of an assignment, in and of itself, does not "constitute[ ] sufficient notice to pay the … assignee, as there is nothing in the assignment which requests the [defendant] to pay the said assignee." *Id.* at 512. *See also Estate of Haas v. Metro–Goldwyn–Mayer, Inc.,* 617 F.2d 1136 (5th Cir.1980) (applying Texas law). RTC has cited no contradictory authority. Under Florida law, then, debtors must be given specific notice that they are to pay assignees when a creditor makes an assignment of his right to collect. *City of North Miami* did not involve an escrow agreement, but its ruling illustrates that in order for a payor to be held liable for disbursing money to the wrong party, he must be given notice that someone else has a right to be paid directly.

RTC asserts broadly that through the assignment HomeFed became the "seller" under the escrow agreement, and CTDC was relegated to status as a disinterested third party. As such, RTC argues, Broad & Cassel breached the escrow agreement by disbursing funds to CTDC. *See United Am. Bank of Cent. Florida, Inc. v. Seligman,* 599 So.2d 1014 (Fla.Dist.Ct.App.1992). In *Seligman,* the interested parties had expressly modified an escrow agreement to provide that funds should be paid directly to a bank as payment for a loan. Instead, the escrow agent disbursed the funds to the assignor,

and the court held the agent liable for breaching the escrow agreement. *Id.* at 1015–16. In this case, however, the escrow agreement did not provide that funds should be distributed directly to HomeFed. While RTC may be technically correct in asserting that CTDC assigned its status as "seller" under the escrow agreement to HomeFed, the question before the court is whether Broad & Cassel may be held liable for breach of contract for disbursing funds to CTDC. Under the rule announced in *City of North Miami,* Broad & Cassel acted within its rights under the agreement in wiring the money to CTDC's account.

Because the court concludes that CTDC and HomeFed did not provide sufficient notice to Broad & Cassel to require disbursing funds directly to HomeFed, the court holds that Broad & Cassel did not breach the escrow agreement as a matter of law. The court therefore will not consider the other arguments raised by Broad & Cassel in its defense.

## C. *Fiduciary Duty*

RTC maintains that even if Broad & Cassel acted within its rights under the contract in disbursing the escrow funds to CTDC, it violated the fiduciary duty it owed to HomeFed as escrow agent. Under Florida law escrow agents have a fiduciary duty to exercise reasonable skill and ordinary diligence. *See Watkins v. NCNB Nat'l Bank of Florida, N.A.,* 622 So.2d 1063, 1064 (Fla.Dist. Ct.App.1993). RTC has cited a California case in which the court determined that an escrow agent violated its fiduciary duty by failing to disburse funds to an assignee, even though the agent had a contractual right to disburse the funds to the original party/assignor. *Kirby v. Palos Verdes Escrow Co.,* 183 Cal.App.3d 57, 227 Cal.Rptr. 785 (1986). The court reasoned, "Receipt of notice of the assignment was equivalent to the receipt of new escrow instructions regarding the party to be paid.... As the escrow holder faced with conflicting instructions, [the escrow agent] had the duty to delay payment of escrow funds until such time as the proper payee was identified." *Id.* 227 Cal.Rptr. at 790. Under California law, giving the funds

to the assignor after notice of an assignment was a breach of the escrow agent's fiduciary duties.

Suggesting that Florida law requires a similar result, RTC cites *Williams v. Hunt Bros. Constr. Inc.,* 475 So.2d 738 (Fla.Dist. Ct.App.1985). In *Williams,* a Florida appellate court held that escrow agents owe a fiduciary duty to assignees of escrow agreement rights. In that case, a subcontractor was not paid by his contractor, and therefore did not pay his supplier. The subcontractor filed a lien for the amount due, and the supplier initiated collection proceedings to collect his debt. *Id.* at 739–40. The subcontractor then assigned his right to collect on the lien to his supplier. When the contractor's successor attempted to settle that debt, he sent a check to the subcontractor's attorney, instructing him "not to release the check until you have delivered to us a proper satisfaction of the recorded lien." *Id.* at 740.

The subcontractor's attorney knew that because of the assignment he had to pay the supplier to satisfy the lien on the property. Regardless of the contractor's instructions, however, the subcontractor's attorney released the check to his client knowing that would not satisfy the lien. The court found that the responsibility for satisfying the lien created a fiduciary relationship between the contractor and the subcontractor's attorney, even though they had not created a formal contract or escrow agreement. "[The attorney] was under a clear and unambiguous duty to protect [the contractor's] rights," and he disregarded the contractor's instructions to satisfy the lien. *Id.* at 741. Therefore, the court held that the attorney had breached his fiduciary duties.

In this case, Broad & Cassel's malfeasance is not so clear. First, Broad & Cassel had very limited duties as an agent under the escrow agreement. Florida law has established that parties may limit escrow agents' responsibilities through contract. *Seligman, supra,* 599 So.2d at 1016; *Cradock v. Cooper,* 123 So.2d 256, 257 (Fla.Dist.Ct.App.1960). Under Paragraph Four of the escrow agreement, the escrow agent did not have the responsibility nor the right to inquire into directions to pay made by St. Joseph's. The

parties to the escrow agreement therefore could not have relied on Broad & Cassel for independent investigation of whether any party was entitled to the escrow funds. Regardless of this limitation, RTC asserts that Broad & Cassel should have refused to adhere to instructions from St. Joseph's. The escrow agreement prohibited such independence, and Broad & Cassel's fiduciary duty cannot be interpreted so broadly as to contravene the agreement.

Also, the assignment was unclear in providing instructions as to where Broad & Cassel should direct payment. Admittedly, the attorney at Broad & Cassel who authorized disbursement of the funds had no knowledge of the assignment through the firm's error. However, there is nothing in the document to suggest that Knobler should have acted differently if he had known its provisions. Florida contract law does not require a payor to distribute funds to an assignee unless it is specifically prescribed in the assignment. The court's reading of fiduciary duty under Florida law does not require an escrow agent to disregard the escrow agreement and the direct instructions of the authorizing party by paying an assignee. Accordingly, the court holds as a matter of law that Broad & Cassel did not violate its fiduciary duty by disbursing the funds to CTDC.

### III. Conclusion

The court concludes that Florida law did not require Broad & Cassel to disburse funds to HomeFed under the escrow agreement, because CTDC's assignment of rights to HomeFed did not provide specific notice that HomeFed was to be directly paid under the agreement. Also, Broad & Cassel's fiduciary duties did not require it to disregard St. Joseph's instructions to disburse funds to CTDC because it had notice of CTDC's assignment of rights. Therefore, the court **GRANTS** Defendant Broad & Cassel's motion for summary judgment (Doc. 47), and instructs the clerk of the court to enter judgment accordingly.

It is **SO ORDERED.**