[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10012

Non-Argument Calendar

_____

MARK A. TURNER,

Plaintiff-Appellant

*versus*

ROCKET MORTGAGE, LLC
AMROCK, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

2                    Opinion of the Court                    24-10012

D.C. Docket No. 1:22-cv-23028-BB

_____

Before GRANT, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Mark Turner appeals the district court's order dismissing his pro se complaint with prejudice. We affirm in part because Turner's Second Amended Complaint failed to state a claim against Rocket Mortgage, LLC under state or federal law, and failed to state a claim against Amrock, LLC, for fraud. We reverse in part because Turner's complaint was not a shotgun pleading and adequately stated a claim against Amrock for negligent breach of fiduciary duty under Florida law, and we remand for further proceedings consistent with this opinion.

**I.**

Turner is a senior citizen living on a fixed income.[1] He entered into a mortgage loan agreement with defendant Rocket Mortgage, LLC, to consolidate credit card debt and pay the accumulated property taxes on his home, including taxes that were past due for the prior year. Rocket employed its subsidiary, defendant Amrock, LLC, as title insurance agent, escrow agent, and closing agent to accurately account for "all property taxes obligations,

_____

[1] At this stage of the proceedings, we assume that the facts alleged in Turner's Second Amended Complaint are true. *See K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1043 (11th Cir. 2019).

liens, [and] encumbrances," "assume the fiduciary," and "adminis-trate the plaintiffs [sic] escrow account and disburse all real-estate taxes and insurance" as provided in a closing disclosure, insurance premium disclosure, and settlement agent certification.

The mortgage loan closing disclosure and settlement state-ment indicated that current and past due property taxes, specified credit card debts, and closing costs and other loan-related charges were to be paid from the loan amount, with the remainder to be disbursed to Turner. The documents identified Amrock as the "settlement agent" and "Title Agency Holding Funds" and stated that the settlement agent had reviewed the closing disclosure, the settlement statement, the lender's closing instructions, and "any and all other forms relative to the escrow funds" and agreed "to disburse the escrow funds in accordance with the terms of this transaction and Florida law."

But Amrock did not pay Turner's past-due property tax. Six days after closing, on December 29, 2020, Amrock mailed a check for the overdue tax to the county tax office. The check did not arrive by the county's December 31 payoff deadline, so the county imposed an additional fee that increased the tax delinquency from $2,927.04 to $3,079.64. When Amrock's check for $2,927.04 ar-rived, the county rejected the payment as insufficient and returned the check to Amrock with a letter of explanation. Amrock filed the county's letter "as a paid in full notification from the county." It did not notify Turner that the overdue tax had not been paid.

Three months later, Amrock sent Turner a "refund" check, accompanied by a letter explaining that a "post-closing review of your transaction was completed and revealed that a refund in the amount of $2,927.04 is owed to you." The letter informed Turner that the check could "be cashed or deposited" with his bank and that "[n]o further action" by Turner was required.

Rocket eventually paid Turner's past due property taxes and added approximately $3,000 to his principal loan balance. Based on the higher principal balance, it increased Turner's mortgage payment from approximately $600 per month to about $740 per month, a change that was "financially devastating" to Turner given his fixed income. When Turner did not pay the new payment amount in full, Rocket began charging late fees and reporting Turner's late payment status to credit reporting agencies. In August 2022, Rocket notified Turner that his mortgage loan was in default.

Turner disputed Rocket's negative credit report and attempted to persuade Amrock to take responsibility for the unpaid property taxes and Rocket to "adjust" his principal loan balance and return his mortgage payment to the previous amount. Amrock and Rocket refused.

Turner filed a lawsuit in Miami-Dade County, Florida, alleging state and federal claims against Rocket and Amrock. The defendants removed Turner's lawsuit to federal court based on his federal claim. Once in federal court, Turner filed a Second Amended Complaint alleging state-law claims for breach of

fiduciary duty, negligence, and fraud against Rocket and Amrock, and a federal claim for violation of the Fair Credit Reporting Act against Rocket.

The parties engaged in mediation and reached a verbal agreement to settle Turner's claims. But Turner subsequently moved to reopen the case and proceed with the litigation, claiming that the defendants refused to include material terms from the parties' verbal agreement in the settlement documents. The district court denied the motion to reopen and ordered Turner to sign the written settlement agreement prepared by the defendants. Turner filed multiple motions seeking reconsideration of the district court's order to sign the settlement agreement, all of which were denied.

Eventually, the defendants moved to dismiss Turner's complaint with prejudice for his failure to obey the court's order to sign the settlement agreement and on the grounds that the Second Amended Complaint failed to comply with federal pleading rules and failed to state a claim for relief. The defendants also requested attorney's fees and costs.

The district court granted the defendants' motion to dismiss in part, concluding that the Second Amended Complaint was an impermissible "shotgun" pleading and that it failed to state a claim for relief. The court denied the defendants' request for attorney's fees and costs without prejudice, giving the defendants leave to file a renewed request that complied with local rules. The court did

not reach the defendants' request to dismiss Turner's complaint as a sanction for defying the court's orders.

Turner appeals the district court's judgment dismissing his Second Amended Complaint with prejudice. He argues, among other things, that the district court erred in determining that his complaint failed to comply with federal pleading standards and failed to state a claim.[2]

## II.

We review a district court's dismissal of a complaint on "shotgun pleading" grounds for abuse of discretion. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). We review a district court's order granting a motion to dismiss for failure to state a claim de novo, accepting the allegations in the complaint as true and making all reasonable inferences in the plaintiff's favor. *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1043 (11th Cir. 2019);

---

[2] We do not address Turner's arguments about the enforceability of the written settlement agreement prepared by the defendants and his related due process and spoliation arguments because the district court ultimately did not enforce the settlement agreement—the court did not reach the defendants' request to dismiss Turner's lawsuit for failure to comply with the order to execute the settlement documents. And we lack jurisdiction to consider Turner's arguments about the district court's post-appeal ruling on attorney's fees and costs because Turner did not file a timely notice of appeal from that order— the order on attorney's fees and costs was entered after Turner appealed the dismissal order, and he did not file a new notice of appeal or amend his previous notice after the order on attorney's fees was issued. *See* Fed. R. App. P. 3(c)(1)(B), 4(a)(1)(A); *Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs*, 162 F.3d 653, 660–61 (11th Cir. 1998).

*see United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1359 (11th Cir. 2023).

## III.

Federal pleading rules require a complaint to contain "a short and plain statement" of each claim for relief and to state the plaintiff's claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a)(2), 10(b). Complaints that violate these rules because they are so disorganized, ambiguous, or full of "rambling irrelevancies" that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests" are sometimes referred to as "shotgun" pleadings. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320–23 (11th Cir. 2015). District courts have the authority to dismiss a shotgun complaint after giving the plaintiff at least one opportunity to revise his pleading and remedy its deficiencies. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–58 (11th Cir. 2018).

Pleadings drafted by pro se plaintiffs are liberally construed. *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022). "And while this circuit's shotgun-pleading rule applies to everyone, we ordinarily give *pro se* litigants more leeway when it comes to drafting." *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019).

Here, the district court determined that Turner's Second Amended Complaint was a shotgun pleading because it contained

"a confusing narrative" that was "replete with immaterial facts not obviously connected to any particular cause of action" and so unclear that the defendants could not be expected to formulate a response. This was an abuse of discretion because it failed to liberally construe Turner's pro se complaint.

To be sure, the complaint is not a model of clarity. Instead of setting out all the factual and legal allegations for each claim in a separate count, Turner's complaint starts with a section labeled "Facts Common to All," which contains numbered paragraphs with both factual and legal allegations related to all his claims. That is followed by five one-paragraph counts that do no more than state the nature of his five claims.

But read with the lenient eye that we must use for pro se pleadings, it is not difficult to determine what claims are raised in the complaint and which factual and legal allegations support which claims. The factual narrative is concise—eleven paragraphs occupying five pages—and focused on the obligations of Rocket and Amrock related to the payment of Turner's property taxes, the failure to meet those obligations, and the damages Turner suffered as a result. And although four of the five claims are brought against both defendants, the complaint and attached documents provide an adequate description of each defendant's role in the relevant events to allow them to respond separately to the claims against them.

The "Facts Common to All" section of Turner's complaint also contains headings and legal allegations tying his factual

allegations to specific claims.  For example, the complaint alleges that Rocket employed Amrock to "accurately account for all property taxes obligations, liens, [and] encumbrances[,] assume the fiduciary and administrate the plaintiffs [sic] escrow account and disburse all real estate taxes and insurance," and that "Rocket Mortgage and Amrock had a Fiduciary Responsibility to service and close the plaintiffs [sic] loan and pay real-estate tax debt."  These allegations, though inartfully worded and haphazardly punctuated, clearly relate to Turner's breach-of-fiduciary-duty claim.  Combined with the other factual allegations, the "Breach of Fiduciary" count, the "conclusion" section, and the documents attached to the complaint, they give the defendants adequate notice of Turner's breach-of-fiduciary-duty claim and the grounds upon which the claim rests.

Similarly, Turner's allegations that "Amrock issued the insufficient amount for disbursement for real-estate tax with negligence" and that "Rocket Mortgage and Amrock negligently failed to disclose to the plaintiff that his real-estate property taxes were unpaid and delinquent" provide sufficient notice of the basis for his negligence claim, which asserts that Rocket and Amrock "were Civil negligent regarding the Plaintiffs [sic] mortgage loan, payment and disbursement of real estate taxes."  And Turner's allegation that Rocket violated the Fair Credit Reporting Act when it "imputed in-accurate [sic] and false derogatory and credit information on the Plaintiffs [sic] credit report and history causing irreparable damage and financial losses," combined with attached correspondence showing that Rocket reported a late payment to credit

reporting agencies, provides fair notice of the basis for his Fair Credit Reporting Act claim against Rocket.

In short, Turner's Second Amended Complaint, read liberally, was not a shotgun pleading and should not have been dismissed on that ground.

## IV.

Turning to the district court's alternative ground for dismissal, we consider whether the Second Amended Complaint stated a claim for relief against either of the defendants. To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Turner's Second Amended Complaint raised four state claims against Rocket and Amrock: breach of fiduciary duty, negligence, and two counts of fraud. It also raised one federal claim against Rocket for violation of the Fair Credit Reporting Act. We address Turner's breach-of-fiduciary-duty and negligence claims together before turning to his fraud claims, and then to his FCRA claim.

## A.

Under Florida law, breach of fiduciary duty and negligence are separate causes of action that require similar proof: (1) the existence of a duty; (2) breach of that duty; (3) proximate causation; and (4) damages. *Wachovia Ins. Servs., Inc. v. Toomey*, 994 So. 2d 980, 990 (Fla. 2008); *see Kelly v. Lodwick*, 82 So. 3d 855, 857 (Fla. Dist. Ct. App. 2011). "A breach of fiduciary duty claim may be based on negligence or intentional conduct." *Amato v. City of Miami Beach*, 208 So. 3d 235, 238 (Fla. Dist. Ct. App. 2016). And depending on the circumstances, a fiduciary may have duties arising from common law in addition to those arising from the fiduciary relationship. *See Toomey*, 994 So. 2d at 990. One who undertakes to provide a service not specifically required by a fiduciary relationship, for example, has a common-law duty to act with due care in performing that service. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003); *see Biadi v. Laws. Title Ins. Corp.*, 374 So. 2d 30, 34–35 (Fla. Dist. Ct. App. 1979). So "negligence and breach of fiduciary duty can be pled in the alternative." *Toomey*, 994 So. 2d at 990.

If the alleged duty arises from a fiduciary relationship, the claimant must plead and prove the existence of that relationship. *See Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. Dist. Ct. App. 1993) (quotation omitted). The parties to a loan contract ordinarily do not owe fiduciary duties to one another. *See id.*; *Cap. Bank v.*

*MVB, Inc.*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994). Moreover, "a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Costa Invs., LLC v. Liberty Grande, LLC*, 353 So. 3d 627, 632 (Fla. Dist. Ct. App. 2022) (quotation omitted).

When the parties to a contract agree on an escrow agent, however, the escrow agent taking on that role acts as an agent of, and owes a fiduciary duty to, the principal parties. *United Am. Bank of Cent. Fla., Inc. v. Seligman*, 599 So. 2d 1014, 1016 (Fla. Dist. Ct. App. 1992). The responsibilities of an escrow agent may be established by express or implied agreement. *Id.* "In the absence of an express agreement, written or oral, the law will imply from the circumstances of the escrow that the agent has undertaken a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the escrowed property, and (2), to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (*i.e.*, to disburse the escrowed funds) in strict accordance with the principals' agreement." *Id.*

A title insurance company that also acts as closing agent owes a fiduciary duty to the principal parties involved in the transaction. *The Fla. Bar v. Hines*, 39 So. 3d 1196, 1200 (Fla. 2010). In general terms, "a closing agent has the duty to supervise the closing in a reasonably prudent manner." *Id.* (quotation omitted).

Escrow agents also have a duty to disclose all material facts. *Watkins*, 622 So. 2d at 1064. "In an arms-length transaction, however, there is no duty imposed on either party to act for the benefit

or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." *Id.* at 1065 (quotation omitted).

Turner adequately stated claims for breach of fiduciary duty and negligence against Amrock. He alleged that Amrock acted as escrow agent, title insurance company, and closing agent. In those roles, Turner alleged, Amrock had the duty to accurately account for property tax obligations and other encumbrances, and to "administrate [his] escrow account and disburse all real-estate taxes and insurance" as provided in the closing documents. He also alleged that "Amrock in concert with Rocket had the professional fiduciary responsibility" to "pay and relinquish all outstanding Miami Dade County property taxes before or at the loan closing date" to ensure that the loan could "legally process and close" and that title to the property was "free and clear of any and all tax liens and encumbrances." He alleged that Amrock breached those duties by issuing an insufficient amount to pay his property taxes and, when the county returned the payment, negligently failing to "re-issue a check with the correct amount." He further alleged that Amrock negligently failed to disclose that the delinquent property taxes had not been paid—instead, it filed the county's rejection notice as a "paid in full" notice and "inconspicuously" sent him a "refund check." Finally, Turner alleged that he suffered financial harm from these breaches when Rocket added approximately $3000 to his principal loan balance, increased his monthly mortgage

payment to an amount that he could not afford to pay, and caused "negative remarks" on his credit history.

But Turner did not state a claim for negligence or breach of fiduciary duty against Rocket.  At best, Turner alleged that Rocket—whose role as lender in the transaction was governed by the loan contract—had a contractual obligation to ensure that his property taxes were paid.  The Second Amended Complaint did not raise a breach-of-contract claim or allege facts supporting an inference that Rocket had any fiduciary or common law duty to Turner separate from its contractual obligations.  *See Watkins*, 622 So. 2d at 1065; *Costa Invs., LLC*, 353 So. 3d at 632.

The complaint also failed to state facts making Rocket vicariously liable for Amrock's alleged breaches of its duties.  Turner alleged that Rocket should be held vicariously liable as Amrock's "parent company" and because Amrock acted as an "employee and agent" of Rocket for purposes of the loan transaction.  But even if we accept as true the allegation that Rocket is Amrock's parent company, that fact is not enough to make Rocket vicariously liable for Amrock's alleged misdeeds.  Under Florida law, a parent company cannot be held liable for the torts of its subsidiary under an agency theory unless the plaintiff shows that the parent exercised an extraordinary degree of control over the subsidiary, so that the subsidiary was a "mere instrumentality" of the parent.  *Reynolds*

*Am., Inc. v. Gero*, 56 So. 3d 117, 120 (Fla. Dist. Ct. App. 2011) (quotation omitted).  Turner made no allegations to that effect.

### B.

Turning to the remaining state-law claims in the Second Amended Complaint, Turner failed to state a claim for fraud against either of the defendants.  To state a claim for fraud under Florida law, a plaintiff must allege facts showing that the defendant (1) made a false statement concerning a material fact, (2) knew that the representation was false, (3) intended that someone else would rely on the representation, and (4) caused harm to the party who relied on the representation.  *Plastiquim, S.A. v. Odebrecht Constr., Inc.*, 337 So. 3d 1270, 1273 (Fla. Dist. Ct. App. 2022).  A plaintiff must specifically describe the conduct constituting fraud; general legal allegations are insufficient to withstand a motion to dismiss in state or federal court.[3]  *Id.*; *see* Fed. R. Civ. P. 9(b).

The complaint alleges that Rocket and Amrock intentionally made "material false statements" and "engaged in fraudulence" with respect to his mortgage loan and the disbursement of funds, but fails to specify what statements were false, when the statements were made and by whom, whether and how Turner relied

---

[3] We are mindful that because we affirm the dismissal of Turner's only federal claim, the district court must decide on remand whether to continue to exercise supplemental jurisdiction over his surviving state claims or to remand those claims back to state court.  *See Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865–66 (11th Cir. 2022); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1123 (11th Cir. 2005).

on the statements, and how he was harmed.  The complaint's bare legal conclusions are not enough to survive the defendants' motion to dismiss.  *See Iqbal*, 556 U.S. at 678–79.

## C.

Like his allegations of fraud, Turner's allegation that Rocket violated the Fair Credit Reporting Act was vague and conclusory. He failed to allege facts supporting a cause of action against Rocket under the FCRA.

The FCRA prohibits knowingly providing inaccurate information about a consumer to credit reporting agencies.  15 U.S.C. § 1681s-2(a)(1).  It also requires entities who furnish information to credit reporting agencies to investigate if they receive notice that a consumer disputes the accuracy or completeness of information they provided.  15 U.S.C. § 1681s-2(b).  The only private right of action consumers have against furnishers of information under these provisions is for violation of the duty to conduct a reasonable investigation after receiving notice of a dispute under § 1681s-2(b)—consumers do not have a private right of action under the FCRA against furnishers who have supplied inaccurate information. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018); *see* 15 U.S.C. § 1681s-2(b), (c)(1).  To succeed on a failure-to-investigate claim against an entity that furnished information to a credit reporting agency, a consumer must show not only that the furnisher failed to conduct a reasonable investigation after receiving notice of a dispute, but also that if the furnisher *had* conducted a reasonable investigation, it would have discovered that the

information it provided was incorrect or incomplete. *Felts*, 893 F.3d at 1312–13.

Here, Turner alleged that Rocket furnished false negative information that appeared on his credit report and caused "irreparable damage and financial losses." He attached documents indicating that Rocket reported a "late payment" to a credit reporting agency, and that Turner disputed an item on his credit report involving Rocket as inaccurate, claiming that "fraudulent charges" were made on the account. But Turner did not allege facts showing that Rocket received notice of his dispute; that after receiving notice, it failed to conduct a reasonable investigation; or that if it had conducted a reasonable investigation, it would have discovered that the information it provided was inaccurate. *See id.* Even taking as true his allegation that Rocket provided inaccurate information, that fact alone is insufficient to state a claim against Rocket under the FCRA. *See id.* at 1312.

## V.

The facts alleged in Turner's Second Amended Complaint failed to state a claim against Rocket Mortgage, LLC under state or federal law and failed to state a claim against Amrock, LLC for fraud. We therefore affirm the district court's dismissal of Turner's FCRA claim and his state-law claims for breach of fiduciary duty, negligence, and fraud against Rocket. We also affirm the dismissal of Turner's fraud claims against Amrock. But because the Second Amended Complaint—read liberally as a pro se pleading—adequately stated a claim against Amrock for breach of fiduciary duty

18                    Opinion of the Court                    24-10012

and/or negligence under Florida law, we reverse the dismissal of those claims and we remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**