We have for review the complaint of The Florida Bar (Bar) and the referee's report regarding alleged ethical breaches by Daniel Foster Joy. Joy cross-petitions for reconsideration of the referee's findings of guilt. We have jurisdiction. Art. V, § 15, Fla. Const.
FACTS
Since approximately 1985, Joy represented Joel Cantor (J. Cantor) and his father Irwin (I. Cantor) in personal and business matters. In 1988, Joy developed a friendship with and eventually began to represent Sam Cohen. In 1990, J. Cantor, I. Cantor and Cohen became shareholders in Morrison Court, Inc. (Morrison Court), a corporation engaged in purchasing and managing real estate. Shortly after incorporation, Morrison Court purchased the Morrison Court Apartments (Apartments) from G O Properties (G O) *Page 1166 
and gave mortgages to both G O and the Resolution Trust Corporation (RTC). In July 1991, the Apartments were destroyed by fire. Midland Risk Insurance Company (Midland Risk), insurance carrier for the Apartments, denied payment of Morrison Court's claim due to suspicions of arson. In September 1991, J. Cantor, on behalf of Morrison Court, retained Joy to pursue Morrison Court's claim against Midland Risk. J. Cantor became president of Morrison Court in January of 1992. In May 1992, J. Cantor bought out all remaining shareholders of Morrison Court (including I. Cantor) except for Cohen.
In early 1992, due to several negative newspaper articles, Joy began to distrust the Cantors. In early 1993, Joy and Cohen discussed concerns that the Cantors would siphon off funds from Midland Risk for their personal purposes. Consequently, Joy began to provide Cohen with blind copies of correspondence between the Cantors and Joy without J. Cantor's knowledge.
In August 1993, Joy, on behalf of Morrison Court, entered a settlement agreement with Midland Risk, the RTC, and G O in which Midland Risk would pay a total of $1,250,000 in settlement of Morrison Court's claims. The agreement required Midland Risk to pay $750,000 to the RTC in satisfaction of its first mortgage and $500,000 to Joy's law firm's trust account for the benefit of Morrison Court and G O. The $500,000 check was made payable to Joy's trust account "on behalf of Morrison Court, Inc. and G O Properties." The letter of transmittal accompanying the check stated that Joy could not disburse the funds to Morrison Court and G O until they had reached an agreement.
Following the agreement, Joy and the Cantors discussed the possibility of moving the $500,000 from Joy's trust account to another trust or escrow account in order to protect it from Morrison Court's creditors, such as G O.I. Cantor, who was no longer a shareholder at this point, recommended the move. J. Cantor, who was also the president of Morrison Court, advised against it. Without telling either, Joy withdrew the $500,000 from his trust account and deposited it in an interest-bearing account in his wife's name as trustee for the benefit of 2311 MC Corporation, a nonexistent corporation. Joy then told G O's lawyer that he had disbursed the funds from his trust account and that G O had no further interest in the insurance proceeds because its claim had been dismissed with prejudice by the court when the settlement was consummated.
Meanwhile, in an attempt to protect Cohen's interest from J. Cantor, Cohen assigned his Morrison Court stock to Joy. Neither Joy nor Cohen notified Morrison Court or J. Cantor of the transfer. Later, Joy told Cantor that he had purchased Cohen's stock. When J. Cantor accused Joy of entering into the $1,250,000 settlement without his approval, Joy pushed Cantor against a bookshelf and Cantor struck Joy. Cantor then fired Joy as counsel for Morrison Court and advised G O that Morrison Court would honor its agreement with G O.
Finally, in September 1993, the parties reached a final settlement and the $500,000 was disbursed, from which Joy's firm received $93,500 in legal fees plus costs. Joy kept the $266.57 in interest which had accumulated on the funds while in his wife's account.
BAR PROCEEDINGS AND REFEREE'S REPORT
The referee found Joy in violation of eight of the Rules Regulating The Florida Bar: rules 4-1.7(a), 4-1.7(b) and 4-1.7(c) for conflict of interest; rules 4-1.15(c), 4-1.15(d), and 5-1.1(b) for mishandling the $500,000; and rules 4-4.1 and 4-8.4(c) for making false statements by omission of material facts in his representations to G O's lawyer. The referee recommended that Joy be disciplined by public reprimand and required to pay $5,599.72 in costs.
The Bar appealed the referee's recommendation that Joy receive a public reprimand and requested instead that Joy receive a 91-day suspension. Joy, in turn, filed a cross-petition challenging the referee's findings of guilt. *Page 1167 
ANALYSIS
We first address Joy's cross-petition challenging the referee's findings of guilt. Rather than seriously disputing the referee's factual findings, Joy contends that the referee's conclusions were erroneous. Although this Court's scope of review is broader for legal conclusions than it is for factual findings, FloridaBar re Inglis, 471 So.2d 38 (Fla. 1985), we find the referee's conclusions in this case to be correct. With respect to the conflict of interest, it is clear that Joy was representing Cohen, a minority shareholder in Morrison Court, at the same time as he was representing Morrison Court without the knowledge of J. Cantor, the president of Morrison Court. Moreover, Joy intended to set aside Cohen's share of the insurance proceeds rather than deliver all of the funds to Morrison Court.
However, the most damning evidence against Joy involves his handling of the $500,000 and his attempts to mislead G O's lawyer. Joy concedes that the original check for the money was made payable to his law firm's trust account "on behalf of Morrison Court, Inc. and G O Properties," and that the transmittal letter accompanying the check stated that Joy could not disburse the funds to either Morrison Court or G O until the two had reached an agreement. Joy's transfer of the $500,000 into an interest-bearing account in his wife's name for the benefit of a non-existent corporation violated the terms of the escrow agreement. Regardless of his representation of Morrison Court, he was obligated to hold the funds in escrow for the benefit of both Morrison Court and G O. As explained in UnitedAmerican Bank of Central Florida, Inc. v. Seligman,599 So.2d 1014, 1016 (Fla. 5th DCA 1992):
 Regardless of the escrow agent's other relationships or duties to the principal parties (lawyers often hold funds in escrow where their client is one principal and some other non-client is another principal party) when principal parties agree upon an escrow agent, by undertaking to act as such, the escrow agent establishes a new legal relationship to the principal parties and by an expressed agreement or by agreement implied in law, agrees to certain basic inherent matters. The relationship established is that of principal and agent and involves the escrow agent being an agent of, and owing a fiduciary duty to, all of the principal parties. In the absence of an express agreement, written or oral, the law will imply from the circumstances of the escrow that the agent has undertaken a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the escrowed property, and (2) to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (i.e., to disburse the escrowed funds) in strict accordance with the principals' agreement.
Joy not only violated his fiduciary obligation under the escrow agreement, he did so with the intent of bettering his client's negotiating position with respect to G O. Despite Joy's argument to the contrary, we agree with the referee when he said:
 Relative to Respondent's transfer of the escrow funds into the account in his wife's name, as trustee, Respondent wrote a letter to Smith, counsel for G O, in which he advised Smith that after the dismissal of G O's action with prejudice, G O's interest in the insurance proceeds terminated. Respondent then further represented to Smith that the funds held in his Trust Account had been disbursed from his Trust Account. Respondent failed to disclose to Smith that the funds had been deposited into an interest-bearing account in the name of his wife, Madeline Joy, as Trustee, for the benefit of 2311 MC Corp. Respondent's statement to Smith regarding his disbursement of the funds from his Trust Account therefore amounted to a half-truth.
 Respondent intended for Smith to misinterpret his statement to mean that he had disbursed the funds directly to his client, Morrison Court, and that he no longer had control over the funds. This intent is evident from Respondent's letter to J. Cantor on September 13, 1993, wherein he proposed to J. Cantor that he tell Smith that the money had been disbursed from his Trust Account and he indicated in parenthesis *Page 1168 
within the letter that the statement he proposed making to Smith was "literally true."
 Further evidence of Respondent's intent to mislead Smith into believing that he had disbursed the funds to his client can be found in Respondent's failure to correct Smith's misunderstanding that the funds had been disbursed to Morrison Court, which misunderstanding was repeatedly stated in Smith's letters to Respondent. Respondent clearly intended for Smith to interpret his statement to mean that he had disbursed the funds to Morrison Court as an attempt to maximize his client's negotiating position.
 Whether the escrow funds were still secure in Respondent's Trust Account and available for distribution by Respondent, as escrow agent, to G 
O should a settlement agreement have been reached, was clearly a material fact relative to the settlement negotiations. Respondent, therefore, intentionally made a false statement or misrepresentation by omission to Smith about a material fact, the disbursement of the escrow funds.
See Florida Bar re Webster, 647 So.2d 816 (Fla. 1994) (petition for reinstatement denied because of "misrepresentation by omission").
Were it not for Joy's lack of a prior disciplinary record, we would be inclined toward imposing more severe discipline than that requested by the Bar. Under the circumstances, Daniel Foster Joy is hereby suspended for a period of ninety-one days and thereafter for an indefinite period until he demonstrates proof of rehabilitation, passes the Multistate Professional Responsibility Examination, and pays the costs of the disciplinary proceedings. The suspension will be effective thirty days from the filing of this opinion so that Joy can close out his practice and protect the interests of his existing clients. If Joy notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Joy shall accept no new business from the date this opinion is published until the suspension is completed. Judgment is entered against Daniel Foster Joy for costs in the amount of $5,599.72, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.