PER CURIAM.
 

 We have for review a referee’s report recommending that respondent, Shari Nicole Hines, be found not guilty of professional misconduct. The Bar seeks review and asserts that Hines should be subject to a rehabilitative suspension. We have jurisdiction.
 
 See
 
 art. V, § 15, Fla. Const.
 

 As more fully explained below, we disapprove the referee’s recommendation that Hines be found not guilty of violating Rule Regulating the Florida Bar 4-5.3(b), governing a lawyer’s responsibilities with respect to nonlawyers associated with a lawyer. That rule provides that the lawyer must make reasonable efforts to ensure that the conduct of a nonlawyer associated with a lawyer is compatible with the professional obligations of the lawyer. We conclude that Hines violated this rule by allowing a nonlawyer, whom she neither employed, supervised, nor controlled, to have signatory authority over an escrow account she opened to handle real estate closings, resulting in misappropriation by that nonlawyer of funds held in trust in the escrow account. We accordingly remand this matter to the referee for a recommendation as to the appropriate discipline.
 
 [1]
 

 STATEMENT OF CASE AND FACTS
 

 On December 10, 2008, The Florida Bar filed a complaint against Hines, alleging that in the course of acting as attorney and closing agent in a real estate transaction involving Paramount Lending Group (Paramount), Hines failed to appropriately supervise a nonlawyer title processor, Ida Ocasio, and the nonlawyer principal of Paramount, John Mohan, and improperly permitted Mohan to have signatory authority over the escrow account she opened to handle all closings she transacted through Paramount. The complaint further alleged that as a result of Hines’ actions, Ocasio, Mohan, or both were able to steal the proceeds of a residential real estate transaction, resulting in harm to the parties involved.
 

 
 *1198
 
 Before the referee, the parties stipulated to the following facts. Prior to November 2007, part of Hines’ law practice included real estate transactions, and she was introduced to Paramount Lending Group and its principal, Mohan. In late November 2007, Hines began accepting potential real estate closings from Paramount. During the course of this business relationship, Hines assumed responsibility for two closings that were generated by Paramount, the second of which was a residential real estate transaction between Alyce and Frederick Droege, the sellers, and George Melendez, the buyer. Prior to the closings, Hines relocated her law office to the same building as Paramount and became a tenant of Paramount, and she opened a new escrow account for all transactions with Paramount. Hines allowed Mohan shared signatory authority over this escrow account. However, because she recognized the inherent danger of allowing a nonlawyer access to an escrow account maintained in her name as an escrow agent and Florida lawyer, she placed caps on the amounts of money that Mohan could access or control in the escrow account.
 

 On or about December 17, 2007, Hines was contacted by Ocasio and was advised that the Droege transaction needed to close that day in Orlando, Florida, pursuant to the closing instructions provided by the lender. As a result of this conversation, Hines forwarded, via Federal Express, ten blank, signed escrow account checks to Ocasio to be used for the closing. The closing was conducted by Ocasio on December 18, 2007, with all parties executing the required closing documents. Hines did not attend the closing and did not see, review, or approve the closing documents before the closing. The HUD-1 closing statement executed by all parties to the closing indicated that the Droeges’ mortgage on the property in the amount of $34,714.10 was to be satisfied and that the Droeges were to be paid the sum of $128,802.68 as their proceeds from the sale. After executing their closing documents, the Droeges were given, by Ocasio, an escrow account check drawn in their favor in the amount of $128,802.68. The Droeges deposited this check into their account at SunTrust. They were advised that there would be a ten-day hold on the check but that $10,000 would be credited immediately and available for their use. The Droeges wrote checks against this $10,000. On December 24, 2007, the bank advised the Droeges that the check was being dishonored because a stop payment order had been issued. It was subsequently determined that Mohan had placed the stop payment order and that he had misappropriated the Droeges’ sale proceeds, as well as the required mortgage payoff to his own use by electronically transferring these funds to his own bank account. Hines was made aware of the stop payment order on or about December 27, 2007, and was able to recover the sum of $45,000 from Mohan and wire this sum to the Droeges on or about January 2, 2008. After discovering that Mohan had misappropriated the funds, Hines reported the matter to the criminal authorities, who initiated a successful criminal action against Mohan. Hines also reported the problem with the Droege transaction to her underwriter, Attorney’s Title Insurance Fund. On February 28, 2008, the Fund satisfied the Droeges’ mortgage and sent them a check in the amount of $83,802.68. This check, when coupled with the $45,000 previously wired to them by Hines, completed the restitution owed to the Droeges as a result of the theft of the proceeds from their original escrow check.
 

 Undisputed testimony at the final hearing also established the following. At the time of the Droege closing, Hines had
 
 *1199
 
 nearly ten years of experience as a lawyer and, in fact, she ran her own title agency from 2002 until 2005. Hines and Mohan had agreed that Mohan would provide Hines with all of Paramount’s title work and that Hines would conduct closings for Paramount. Hines was to receive $300 per closing and Mohan promised about thirty closings a month — an annual income of approximately $108,000. As to her role as escrow agent, Hines testified that she opened the escrow account at issue “specifically for the Paramount transactions” and that she kept the checks for this account in her office, which was locked.
 

 Based on the evidence presented and the stipulation of the parties, the referee concluded that the Bar failed to present clear and convincing evidence that Hines had violated the rules as alleged in the complaint. The referee stated:
 

 At the core of the Bar’s presentation was the fact that the Respondent had placed a non-lawyer on her escrow account as a signatory and that this decision ultimately provided the vehicle by which Mr. Mohan engaged in criminal conduct. The referee was presented with no evidence or case law indicating that it was unethical for an attorney to have a non-lawyer signatory on an escrow account. In fact, the Respondent pointed to a Florida Bar Ethics Opinion that specifically sanctioned such action.
 
 See
 
 Fla. Ethics Opinion 64-40. Furthermore, the referee finds that at the time of Respondent’s decision to make Mr. Mohan a signatory on the account, she had no reason not to trust him and there were no warning signs that he might engage in criminal activity until he had stolen the money.
 

 Having recommended that Hines be found not guilty of any rule violations, the referee recommended that no discipline be imposed and that each party bear its own costs. The Bar seeks review of the referee’s findings and recommendations as to guilt and her recommendation as to discipline and costs.
 

 ANALYSIS
 

 Although the Bar contends that the referee erred in making various factual findings, we find no merit to these challenges. Additionally, as noted, the material facts were stipulated, and the referee adopted the stipulated facts in her report. Accordingly, we approve the referee’s findings of fact.
 

 The Bar also challenges the referee’s recommendations that Hines be found not guilty of violating rules 4 — 1.1, 4 — 5.8(b) and (c), and 4-8.4(a) and (d).
 
 [2]
 
 Given the stipulated material facts, our review of the referee’s recommendations in this regard is de novo.
 
 See Fla. Bar v. Pape,
 
 918 So.2d 240, 243 (Fla.2005) (stating that where there are no genuine issues of material fact and the only disagreement is whether the undisputed facts constitute unethical conduct, the referee’s findings present a question of law that the Court reviews de novo);
 
 Fla. Bar v. Cosnow,
 
 797 So.2d 1255, 1258 (Fla.2001) (stating that whether the attorney’s admitted actions constitute unethical conduct is a question of law).
 

 Despite the Bar’s arguments to the contrary, we conclude that although Hines’ conduct in this ease reflected poor judgment in several respects, it did not constitute a violation of rules 4-1.1 (lawyer shall
 
 *1200
 
 provide competent representation); 4-5.8(c) (lawyer shall review and be responsible for work product of paralegals and legal assistants); 4-8.4(a) (lawyer shall not violate rules, assist or induce another to do so, or do so through actions of another); or 4-8.4(d) (lawyer shall not engage in conduct in connection with practice of law that is prejudicial to administration of justice). However, we disapprove the referee’s recommendation that Hines be found not guilty of violating rule 4-5.3(b) (with respect to nonlawyers associated with lawyer, lawyer must make reasonable efforts to ensure that nonlawyer’s conduct is compatible with professional obligations of lawyer).
 

 In this case, Hines’ role in the transaction was as a title attorney, a closing agent, and an escrow agent. She was providing legal services and, as closing and escrow agent, owed a fiduciary duty to all of the principal parties involved.
 
 See Fla. Bar v. Joy,
 
 679 So.2d 1165, 1167 (Fla.1996). This Court has stated that absent an express agreement, the law implies from the circumstances that an escrow agent undertakes “a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the es-crowed property, and (2) to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (i.e., to disburse the escrowed funds) in strict accordance with the principals’ agreement.”
 
 Id.
 
 Additionally, a closing agent has a duty to supervise the closing in a “reasonably prudent manner.”
 
 Askew v. Allstate Title & Abstract
 
 Co., 603 So.2d 29, 31 (Fla. 2d DCA 1992) (quoting
 
 Fla. S. Abstract & Title Co. v. Bjellos,
 
 346 So.2d 635, 636 (Fla. 2d DCA 1977)) (stating that a title insurance company acting as a closing agent has a duty to supervise a closing in a reasonably prudent manner).
 

 Rule 4 — 5.3(b)(1) provides:
 

 (b) Supervisory Responsibility. With respect to a nonlawyer employed or retained by or associated with a lawyer or an authorized business entity as defined elsewhere in these Rules Regulating The Florida Bar:
 

 (1) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person’s conduct is compatible with the professional obligations of the lawyer....
 

 In this case, Hines’ professional obligations as a lawyer included holding and delivering possession of the escrowed funds in strict accordance with the principals’ agreement and supervising the closing in a reasonably prudent manner. By allowing Mohan, a nonlawyer whom she neither employed, supervised, nor controlled, essentially unfettered access to the funds held in the escrow account, Hines failed in her responsibility to ensure that she had “in effect measures giving reasonable assurance” that Mohan’s conduct would be compatible with those professional obligations. In fact, when it comes to the area of funds held in trust by a lawyer, we conclude that a reading of rule 4-5.3 in its entirety leads to only one reasonable conclusion. A lawyer may permit a nonlawyer to have authority or control over such funds
 
 only
 
 if that nonlawyer is employed by or under the direct supervision and control of the lawyer.
 

 The Florida Bar ethics advisory opinion relied upon by the referee does not support the broad conclusion that it is not unethical for an attorney to have a nonlaw-yer signatory on an escrow account. Both
 
 *1201
 
 the 1964 and the revised 1987 advisory opinions are predicated upon facts involving nonlawyer employees of the lawyer. The 1964 opinion approved the practice of a law firm office manager drawing checks on the firm’s trust account, and the revised 1987 version clarified that “properly authorized and supervised nonlawyer employees” may be signatories on lawyers’ trust accounts.
 
 See
 
 Fla. Bar Comm. on Prof'l Ethics, Op. 64-40 (1964); Fla. Bar Comm, on Prof'l Ethics, Op. 64-40 (reconsideration) (1987). We do not read these opinions as authorizing a lawyer to permit a nonlawyer, nonemployee to have essentially unfettered access to funds held in trust by the attorney, whether in an IOTA trust account or an escrow account in the attorney’s name. There is a critical distinction between an attorney’s office manager and a person who is neither employed by, responsible to, nor otherwise under the supervision and control of the lawyer as here.
 

 Although the ethics opinions of The Florida Bar are not binding on this Court, nevertheless the intent of the ethics opinion for lawyers is clear:
 

 The Committee continues to be of the view that is permissible for a
 
 trusted nonlawyer employee
 
 to draw checks on the trust account upon proper authorization and under appropriate supervision. Attorneys are cautioned, however, that they remain ultimately responsible for compliance with all rules relating to trust accounts and client funds, and that they are subject to discipline for an employee’s misconduct involving client funds.
 

 Fla. Bar Comm. on Prof'l Ethics, Op. 64-40 (reconsideration) (1987) (emphasis added). In this case, Hines stipulated that she recognized the “inherent danger” of allowing Mohan signatory authority on the account. Hines abdicated her responsibility as a lawyer and her fiduciary obligation to the parties involved in this closing when she allowed Mohan access to the funds held in the account. This failure provided Mohan, whom she neither employed, supervised, nor controlled, with the opportunity to misappropriate client funds, which were held in trust in the escrow account.
 

 Accordingly, while we approve the referee’s recommendations regarding the other rule violations charged, we disapprove the referee’s recommendation as tó rule 4-5.8(b). Because the referee did not reach the issue of sanctions, we remand this case to the referee for a hearing and recommendation as to the appropriate sanction, including consideration of a rehabilitative suspension.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 LEWIS, J., concurs in result.
 

 [1]
 

 . We approve the referee's findings of fact and her recommendation that Hines be found not guilty of violating rules 4-1.1 (lawyer shall provide competent representation); 4-1.15 (lawyer shall comply with trust account rules); 4-5.3(a) (paralegals and legal assistants must work under direction or supervision of lawyer); 4-5.3(c) (lawyer shall review and be responsible for work product of paralegals and legal assistants); 4-8.4(a) (lawyer shall not violate rules, assist or induce another to do so, or dp so through actions of another); and 4~8.4(d) (lawyer shall not engage in conduct in connection with practice of law that is prejudicial to administration of justice).
 

 [2]
 

 . The Bar does not specifically challenge the referee’s recommendation that Hines be found not guilty of violating rules 4-1.15 (lawyer shall comply with trust account rules) and 4-5.3(a) (paralegals and legal assistants must work under direction or supervision of lawyer). Thus, the referee’s recommendation of not guilty as to those rules is approved.