# Supreme Court of Florida

_____

No. SC11-1780
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**JOSE CARLOS MARRERO,**
Respondent.

[January 15, 2015]

PER CURIAM.

Having considered the report of the referee and briefs of the parties, the

Court disapproves the referee's recommendations that Respondent Jose Carlos

Marrero did not violate the Rules Regulating the Florida Bar.[1]  As discussed

below, the Court finds Respondent guilty of three violations of Rule Regulating the

Florida Bar 4-8.4(c) (misconduct involving dishonesty, fraud, deceit, or

misrepresentation) and one violation of Rule Regulating the Florida Bar 5-1.1(b)

_____

    1.  We have jurisdiction.  <u>See</u> art. V, § 15, Fla. Const.

(money or other property entrusted to an attorney for a specific purpose is held in trust and must be applied only to that purpose). The case is hereby referred back to the referee to hold a hearing to consider the appropriate sanction. At the hearing, the parties may present arguments regarding aggravating and mitigating factors. Further, the referee is directed to determine the amount of costs to award The Florida Bar, which is the prevailing party. See R. Regulating Fla. Bar 3-7.6(q) (3) (when the Bar is successful, in whole or in part, the Bar's costs may be assessed against the respondent).

## I. BACKGROUND

The Florida Bar alleged that Respondent violated the Rules Regulating the Florida Bar by his conduct when serving as an escrow agent for a loan provided by Ms. Gonzalez, and when processing a related loan from Countrywide Bank. As the referee found in its report, Respondent and Mr. Pedrosa were officers of Weston Professional Title Group, Inc. Respondent was the President and registered agent of Weston. Pedrosa was a mortgage broker. Occasionally, Pedrosa made business arrangements with Ms. Gonzalez. She would make cash loans, through Pedrosa, to his clients.

The evidence demonstrates that on December 13, 2005, Respondent accepted a $200,000 check from Gonzalez that was to be used for a loan. She provided the check through an arrangement she made with Pedrosa. Although

Respondent did not negotiate the agreement with Gonzalez, he knew the funds were for a loan to borrowers Gutierrez and Marrero. Gonzalez testified that Pedrosa informed her the funds were to be used for a second mortgage.

Bank statements show that Respondent deposited the $200,000 cashier's check into his escrow account on December 15, 2005, and he disbursed the entirety of the loan funds by wire transfer to the borrowers the next day, on December 16, 2005. He did not require the borrowers to sign any agreements at the time. The funds were provided to Gutierrez and Marrero before the note and mortgage were prepared or signed. In fact, the mortgage and note were not created until three weeks after the funds were disbursed. Respondent did not draft the "second mortgage" and promissory note until January 10, 2006, which was 25 days after he gave the borrowers the entire $200,000. This conduct did not protect the interests of lender Gonzalez. As Respondent was a fiduciary responsible for the funds and to all involved parties, these deliberate acts are not negligence. He intentionally disbursed the funds the day after receiving them from Gonzalez, without having the borrowers sign any documents at that time. He performed these actions deliberately and knowingly.

Furthermore, in the "second mortgage" Respondent listed the property at issue as collateral for the loan. However, when the mortgage and note were executed on January 11, 2006, and witnessed by Respondent, the borrowers had no

- 3 -

ownership interest in the property that was listed as collateral. The borrowers did not purchase the property until six days later on January 17, 2006.

Although Gonzalez received the loan closing documents on January 11, 2006, Respondent did not record the Gonzalez mortgage until six months later. The deed of mortgage, which Respondent prepared, was executed by Gutierrez and Marrero on January 11, 2006, but was not recorded until June 22, 2006. Thus, Gonzalez did not have a recorded interest in the property until six months after Respondent gave the borrowers the $200,000. At no time during these events did Respondent inform Gonzalez that the funds were being used by the borrowers to purchase the house. Gonzalez had been told that the funds were to be used to make repairs on a house that the borrowers already owned; her loan was to serve as a second mortgage.

Borrowers Gutierrez and Marrero did not own the property until January 17, 2006, which is the date a loan was settled between lender Countrywide Bank and the borrowers. It is significant that the mortgage loan application executed by Marrero to obtain the Countrywide Bank loan failed to disclose the $200,000 loan from Gonzalez as a liability. In addition, because Respondent delayed for many months before recording the $200,000 Gonzalez loan, his actions prevented the loan from being found by any title search performed for the Countrywide Bank closing on January 17, 2006. Further, the compliance form failed to disclose the

$200,000 loan from Gonzalez. The title insurance loan policy, which Respondent signed, also failed to list the Gonzalez loan. Similarly, the Owner's Policy of Title Insurance did not reflect the $200,000 loan. Respondent's title company closed the loan and Respondent signed the policy.

Eventually, after purchasing the property, the borrowers stopped making payments on the Gonzalez loan. Gonzalez's efforts to recover her funds were unsuccessful.

## II. ANALYSIS

The Court has repeatedly stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Shoureas, 913 So. 2d 554, 557-58 (Fla. 2005). Here, the referee recommended that Respondent be found not guilty of any rule violations; we conclude that the facts do not support the referee's recommendation.

First, based upon these facts, the Court finds that Respondent violated rule 4-8.4(c) by drafting, executing, and witnessing a mortgage loan document containing the misrepresentation that the borrowers had the legal authority to encumber the property. Respondent's acts were deliberate and prove the element of intent necessary to find a violation of rule 4-8.4(c).[2] Respondent created

---

2. Before the referee, Respondent argued that he is unable to understand a HUD-1 and, therefore, he did not have the necessary intent to violate rule 4-8.4(c). The referee agreed with Respondent's assertion. The Court disapproves the

documents that others would rely upon, and the documents falsely represented that the borrowers could offer the property at issue as collateral. See Fla. Bar v. Watson, 76 So. 3d 915 (Fla. 2011) (attorney's drafting and signing of letters on his firm letterhead addressed to investors indicating that the investors had invested money in client's development project, when attorney knew they had not invested their money and that others would rely on these fraudulent letters, was dishonest conduct in violation of rule 4-8.4(c)).

---

referee's finding. First, the facts do not support this finding. Respondent was the President and Managing Partner of a title agency, and the primary area of practice at his law firm was real estate transactions. Further, evidence in the record indicates that during this period his business performed between 100 and 120 closings per month, earning between $1500 and $4000 per closing. Also, Respondent admitted attending closings to provide legal advice.

This argument has been made by other respondents, without success. See Fla. Bar v. Brown, 905 So. 2d 76 (Fla. 2005) (the respondent was found guilty of violating rule 4-8.4(c), after claiming that he did not have the necessary intent because he allegedly did not read the business agreement pledging a $420,000 certificate of deposit as security before he executed the agreement). A respondent cannot avoid a finding that he acted intentionally by claiming he was ignorant of the documents he signed or filed. Here, Respondent drafted and executed documents related to the Gonzalez loan. He took and deposited Gonzalez's $200,000 check. Respondent disbursed those funds to the borrowers. His agency, for which he signed checks and documents, provided the title insurance policies that he issued to lender Countrywide Bank and to the borrowers. Also, Respondent's agency was the closing agent for the Countrywide Bank loan. The evidence shows that Respondent was personally involved in numerous aspects of his business. The referee is unsupported in finding that Respondent cannot understand the documents that are crucial to his business and thereby lacked intent to engage in dishonest conduct.

Second, the Court finds Respondent guilty of another violation of rule 4-8.4(c) due to his deliberate omissions and knowing failures to report important information to lender Gonzalez. An attorney serving as an escrow agent has a fiduciary duty to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property. See Fla. Bar v. Hines, 39 So. 3d 1196, 1200 (Fla. 2010). As the Court stated in Florida Bar v. Joy, 679 So. 2d 1165, 1167 (Fla. 1996), an attorney serving as an escrow agent has a duty to act in the benefit of the parties to the transaction. In Joy, 679 So. 2d at 1167, the Court noted United American Bank of Central Florida, Inc. v. Seligman, 599 So. 2d 1014, 1016 (Fla. 5th DCA 1992), which provided:

> Regardless of the escrow agent's other relationships or duties to the principal parties (lawyers often hold funds in escrow where their client is one principal and some other non-client is another principal party) when principal parties agree upon an escrow agent, by undertaking to act as such, the escrow agent establishes a new legal relationship to the principal parties and by an expressed agreement or by agreement implied in law, agrees to certain basic inherent matters. The relationship established is that of principal and agent and involves the escrow agent being an agent of, and owing a fiduciary duty to, all of the principal parties. In the absence of an express agreement, written or oral, the law will imply from the circumstances of the escrow that the agent has undertaken a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the escrowed property, and (2) to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (i.e., to disburse the escrowed funds) in strict accordance with the principals' agreement.

Therefore, Respondent had a duty to inform Gonzalez that the funds she provided were not being used in accord with her agreement in providing the loan. As the Court stated in Hines, 39 So. 3d at 1200, "Hines' role in the transaction was as a title attorney, a closing agent, and an escrow agent. She was providing legal services and, as closing and escrow agent, owed a fiduciary duty to all of the principal parties involved." Although Respondent did not negotiate the initial agreement with Gonzalez, he was serving as the escrow agent and was supposedly maintaining possession of her funds; therefore, he had a duty to inform Gonzalez when he realized that the transaction was not in accord with her agreement. He should have informed Gonzalez that the borrowers were not going to use her funds for a second mortgage because they did not own the property at the time they received her funds. Also, Respondent should have told her that the borrowers used her funds to purchase the property. Further, he should have informed Gonzalez when he was delaying in recording her loan and recording her interest in the property. Respondent accepted the $200,000 and was in a fiduciary role—he had a responsibility to disclose pertinent information to Gonzalez, but he deliberately and knowingly decided not to inform her of these significant facts.

Third, pursuant to those same fiduciary responsibilities, Respondent violated rule 4-8.4(c) with regard to Countrywide Bank. Respondent knew of the Gonzalez loan prior to the Countrywide Bank closing because he personally drafted the

documents for the Gonzalez loan.  Despite this knowledge, he did not disclose the $200,000 loan on the list of encumbrances in the title insurance policy that he issued to lender Countrywide Bank.  Further, he did not inform Countrywide Bank that the down payment on the property was the money that the borrowers received from Gonzalez.  His failures to be truthful created the appearance that the borrowers had invested their own funds into the property.  In addition, by not recording the Gonzalez mortgage until well after the Countrywide Bank closing, Countrywide Bank was prevented from discovering the existence of the Gonzalez loan before the closing.  The Gonzalez loan would constitute an encumbrance against the property.  Respondent has an obligation to be truthful and forthright in his representations.  He had an ethical obligation to include that mortgage on the list of encumbrances existing against the property.  Based upon these facts, which show that Respondent engaged in a pattern of knowing decisions and deliberate acts, the Court finds him guilty of a third violation of rule 4-8.4(c).  He was not truthful in his representations to Countrywide Bank and omitted material information.

Fourth, the Court finds that the evidence demonstrates Respondent violated rule 5-1.1(b).  The rule plainly states that "[m]oney or other property entrusted to an attorney for a specific purpose . . . is held in trust and must be applied only to that purpose."  In Hines, 39 So. 3d at 1200 (quoting Joy, 679 So. 2d at 1167), the

Court stated that "absent an express agreement, the law implies from the circumstances that an escrow agent undertakes 'a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the escrowed property, and (2) to <u>exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (i.e., to disburse the escrowed funds) in strict accordance with the principals' agreement</u>.'" (Emphasis added.) Therefore, rule 5-1.1(b) requires an attorney to apply money held in trust for a specific purpose to only be applied for that purpose, and case law (<u>Hines</u> and <u>Joy</u>) require an attorney serving as an escrow agent to exercise reasonable skill and ordinary diligence in delivering possession of the escrowed property. Thus, a lawyer receiving funds from a third party and depositing the funds into his escrow account has a duty to exercise reasonable diligence to determine for what purpose that third party had provided the funds, before disbursing the funds. Respondent violated these requirements. Gonzalez believed her funds were being used as a second mortgage by people who already owned the property. She provided the loan for them to make improvements to their property; she did not know that the borrowers did not own the property. Based on Gonzalez's past business practices with Pedrosa, she expected the funds would not be provided to the borrowers until the proper documents had been prepared and signed. Therefore, it is clear

Respondent did not apply the funds that Gonzalez had entrusted to him, for the specific purposes she had given him the funds.

Although Respondent asserts that Pedrosa negotiated the agreement with Gonzalez, Respondent had an affirmative legal obligation to know the provisions and conditions of the principal agreement concerning the escrowed property and to dispense the funds in accordance with those terms and agreement. Hines, 39 So. 2d at 1200. Respondent could not rely solely on Pedrosa's description of the agreement. The comment to rule 5-1.1 states, "A lawyer must hold property of others with the care required of a professional fiduciary." In Florida Bar v. Ward, 599 So. 2d 650, 652 (Fla. 1992), the Court addressed this responsibility, stating that lawyers have a unique fiduciary duty, individually and as a profession: "Never is an individual's trust in attorneys more evident, or more at risk, than when he places funds or property into the hands of his attorney." Respondent did not fulfill his responsibilities as an escrow agent with regard to Gonzalez's funds. He did not exercise the necessary care and discretion. Instead, the day after he deposited Gonzalez's funds, he disbursed the entire loan to the borrowers and did not have them execute any documents to make them responsible for the money. Also, when he disbursed the funds, the borrowers did not own the property. Further, as Respondent was active in the Countrywide Bank loan and closing, he knew the money was used by the borrowers to purchase the property. The record

shows that the funds were not disbursed for the purpose for which they were entrusted and that Respondent is guilty of violating rule 5-1.1(b).

## III. CONCLUSION

Accordingly, the Court finds Respondent guilty of three violations of rule 4-8.4(c) and one violation of rule 5-1.1(b). The case is referred back to the referee to hold a hearing to consider the appropriate sanction. The referee shall consider evidence, make findings of fact regarding possible aggravating and mitigating factors, and submit an Amended Report of Referee to the Court recommending a disciplinary sanction. In addition, the referee shall determine the amount of costs to award The Florida Bar as the prevailing party. The referee shall file the Amended Report with the Court within ninety days of the date of this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, Florida; Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida; and Jennifer R. Falcone, Bar Counsel, The Florida Bar, Miami, Florida,

for Complainant

Richard Benjamin Marx of the Law Offices of Richard B. Marx & Associates, Miami, Florida,

for Respondent