# Supreme Court of Florida

_____

No. SC11-1780
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**JOSE CARLOS MARRERO,**
Respondent.

[June 2, 2016]

PER CURIAM.

We have for review a referee's report recommending that Respondent, Jose Carlos Marrero, be found guilty of professional misconduct and suspended from the practice of law for ninety days, followed by three years' probation. We have jurisdiction. See art. V, § 15, Fla. Const.

## BACKGROUND

In September 2011, The Florida Bar filed a complaint against Respondent, Jose Carlos Marrero, alleging that he had violated rules 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) and 5-1.1(b) (trust accounts) of the Rules Regulating the Florida Bar. A referee was appointed

and hearings were held over four days in April and May 2012. The referee submitted a report recommending that Respondent not be found guilty of any rule violations. On review, the Court disapproved this recommendation. In its opinion, the Court recited the following facts:

The Florida Bar alleged that Respondent violated the Rules Regulating the Florida Bar by his conduct when serving as an escrow agent for a loan provided by Ms. Gonzalez, and when processing a related loan from Countrywide Bank. As the referee found in its report, Respondent and Mr. Pedrosa were officers of Weston Professional Title Group, Inc. Respondent was the President and registered agent of Weston. Pedrosa was a mortgage broker. Occasionally, Pedrosa made business arrangements with Ms. Gonzalez. She would make cash loans, through Pedrosa, to his clients.

The evidence demonstrates that on December 13, 2005, Respondent accepted a $200,000 check from Gonzalez that was to be used for a loan. She provided the check through an arrangement she made with Pedrosa. Although Respondent did not negotiate the agreement with Gonzalez, he knew the funds were for a loan to borrowers Gutierrez and Carrero. Gonzalez testified that Pedrosa informed her the funds were to be used for a second mortgage.

Bank statements show that Respondent deposited the $200,000 cashier's check into his escrow account on December 15, 2005, and he disbursed the entirety of the loan funds by wire transfer to the borrowers the next day, on December 16, 2005. He did not require the borrowers to sign any agreements at the time. The funds were provided to Gutierrez and Carrero before the note and mortgage were prepared or signed. In fact, the mortgage and note were not created until three weeks after the funds were disbursed. Respondent did not draft the "second mortgage" and promissory note until January 10, 2006, which was 25 days after he gave the borrowers the entire $200,000. This conduct did not protect the interests of lender Gonzalez. As Respondent was a fiduciary responsible for the funds and to all involved parties, these deliberate acts are not negligence. He intentionally disbursed the funds the day after receiving them from

Gonzalez, without having the borrowers sign any documents at that time. He performed these actions deliberately and knowingly.

Furthermore, in the "second mortgage" Respondent listed the property at issue as collateral for the loan. However, when the mortgage and note were executed on January 11, 2006, and witnessed by Respondent, the borrowers had no ownership interest in the property that was listed as collateral. The borrowers did not purchase the property until six days later on January 17, 2006.

Although Gonzalez received the loan closing documents on January 11, 2006, Respondent did not record the Gonzalez mortgage until six months later. The deed of mortgage, which Respondent prepared, was executed by Gutierrez and Carrero on January 11, 2006, but was not recorded until June 22, 2006. Thus, Gonzalez did not have a recorded interest in the property until six months after Respondent gave the borrowers the $200,000. At no time during these events did Respondent inform Gonzalez that the funds were being used by the borrowers to purchase the house. Gonzalez had been told that the funds were to be used to make repairs on a house that the borrowers already owned; her loan was to serve as a second mortgage.

Borrowers Gutierrez and Carrero did not own the property until January 17, 2006, which is the date a loan was settled between lender Countrywide Bank and the borrowers. It is significant that the mortgage loan application executed by Carrero to obtain the Countrywide Bank loan failed to disclose the $200,000 loan from Gonzalez as a liability. In addition, because Respondent delayed for many months before recording the $200,000 Gonzalez loan, his actions prevented the loan from being found by any title search performed for the Countrywide Bank closing on January 17, 2006. Further, the compliance form failed to disclose the $200,000 loan from Gonzalez. The title insurance loan policy, which Respondent signed, also failed to list the Gonzalez loan. Similarly, the Owner's Policy of Title Insurance did not reflect the $200,000 loan. Respondent's title company closed the loan and Respondent signed the policy.

Eventually, after purchasing the property, the borrowers stopped making payments on the Gonzalez loan. Gonzalez's efforts to recover her funds were unsuccessful.

- 3 -

Fla. Bar v. Marrero, 157 So. 3d 1020, 1022-23 (Fla. 2015). Based on these facts, the Court found that Respondent violated rule 4-8.4(c) by: (1) drafting, executing, and witnessing a mortgage loan document containing the misrepresentation that the borrowers had the legal authority to encumber the subject property; (2) deliberately and knowingly failing to inform Gonzalez that the funds she provided were not being used in accordance with her agreement and failing to inform her of the delay in recording the loan and recording her interest in the property; and (3) failing to disclose the Gonzalez loan in the course of his handling of the Countrywide Bank loan. The Court also found that Respondent violated rule 5-1.1 by failing to dispense the funds provided by Gonzalez and held by him as escrow agent in accordance with terms of the agreement between Gonzalez and the borrowers. Id. at 1023-26. The Court referred the case back to the referee to hold a hearing and recommend a disciplinary sanction. Id. at 1026.

At the hearing before the referee, Respondent presented the testimony of several character witnesses, who testified regarding Respondent's honesty and integrity. Respondent also testified on his own behalf. Based on the testimony and other evidence at the hearing, the referee found the following mitigating factors: (1) absence of prior disciplinary record; (2) full and free disclosure and cooperative attitude; (3) inexperience in the practice of law; (4) good character and reputation; and (5) interim rehabilitation. In aggravation, the referee found the following: (1)

dishonest or selfish motive; and (2) indifference to making restitution. The referee recommends that Respondent be suspended for ninety days, followed by a three-year probationary period, during which Respondent must complete several courses pertaining to real estate contracts and closings, settlement statements, escrow, and ethics. The referee also recommends that Respondent be required to pay the costs of supervision during the probationary period and pay the Bar's costs in this case in the amount of $11,573.24. The Bar seeks review of the referee's disciplinary recommendation and contends that Respondent should be disbarred.

## ANALYSIS

In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).

Here, in making her disciplinary recommendation, the referee considered three standards under which suspension is the appropriate sanction: standards 4.12, 4.52, and 7.2. Those standards address improperly dealing with client property,

lack of competence, and violating duties owed as a professional. Fla. Stds. Imposing Law. Sancs. 4.12, 4.52, 7.2. The referee also considered standard 5.11(f) which provides that disbarment is appropriate when a lawyer engages in intentional conduct involving dishonesty, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice law. Fla. Stds. Imposing Law. Sancs. 5.11(f). We conclude that the referee correctly considered these standards given the findings and conclusions made in the prior opinion in this case. Further, although standard 5.11(f) provides for the presumptive sanction of disbarment, considering the five mitigating factors found by the referee and not challenged by the Bar in this case, we conclude that suspension is supported under these standards.

Based on her consideration of the rule violations found by the Court in its opinion, the referee found Florida Bar v. Watson, 76 So. 3d 915 (Fla. 2011), and Florida Bar v. Erlenbach, 138 So. 3d 369 (Fla. 2014), to be relevant and instructive. In Watson, an attorney was suspended for three years after being found guilty of three violations of rule 4-8.4(c) and four violations of rule 5-1.1(b). The attorney facilitated his client's fraudulent transactions and mishandled the funds of multiple investors in his client's development project. The investors had entrusted various sums of money to be held in the attorney's trust account for the purpose of serving as collateral for a standby letter of credit. However, at his

client's direction, the attorney improperly disbursed the money. The attorney also wrote a letter to other investors stating that the funds would be held in his trust account which was a misrepresentation upon which the investors relied. Id. at 918-21.[1]

In Erlenbach, the attorney repeatedly failed to file her personal income tax returns, repeatedly failed to pay income taxes owed, and withheld federal income tax, social security tax, and Medicare tax from her employees but failed to pay those sums to the Department of the Treasury as required. Erlenbach, 138 So. 3d at 370-71. In doing so, Erlenbach violated rules 3-4.3 (commission of an act that is unlawful or contrary to honesty and justice) and 4-8.4(c). The Court rejected the referee's recommendation of an eighty-nine-day suspension and instead imposed a one-year suspension followed by two years' probation. There were several mitigating circumstances, including personal and emotional problems and good character, but the attorney had significant experience in the practice of law, three prior instances of discipline, and there was a pattern of misconduct. Id. at 371-72.

Here, the misconduct committed by Respondent is quite similar to that which occurred in Watson, and although Erlenbach is factually different, both Erlenbach and Respondent committed several violations of rule 4-8.4(c), violations

1. The attorney in Watson was eventually disbarred for additional violations in a later case. Florida Bar v. Watson, 88 So. 3d 151 (Fla. 2012) (table).

that the Court does not view lightly.  See Watson, 76 So. 3d at 926 (stating that violations of rule 4-8.4(c) are not viewed as minor and attorney dishonesty cannot be tolerated).  Given the serious nature of Respondent's violations, we disapprove the referee's recommendation and conclude that Respondent, like Watson and Erlenbach, should receive a suspension requiring proof of rehabilitation prior to reinstatement.

Accordingly, Jose Carlos Marrero is hereby suspended from the practice of law for three years.  The suspension will be effective thirty days from the filing of this opinion so that Respondent can close out his practice and protect the interests of existing clients.  If Respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately.  Respondent shall fully comply with Rule Regulating the Florida Bar 3-5.1(g).  Further, Respondent shall accept no new business from the date this opinion is filed until he is reinstated.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Jose Carlos Marrero in the amount of $11,573.24, for which sum let execution issue.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, Florida; Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida; and Jennifer R. Falcone, Bar Counsel, The Florida Bar, Miami, Florida,

     for Complainant

Richard Benjamin Marx of the Law Offices of Richard B. Marx & Associates, Miami, Florida,

     for Respondent